UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SERIGNE SALIOU NDOYE,

Petitioner,

v.

WARDEN, et al.,

Respondents.

No. 1:26-cv-0314 DC CSK

FINDINGS AND RECOMMENDATIONS GRANTING PETITIONER'S WRIT OF HABEAS CORPUS

Petitioner Serigne Saliou Ndoye, an asylum seeker from Senegal who entered the United States in October 2023, filed an unverified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner was initially detained at or near Lukeville, Arizona, and released on October 28, 2023, on his own recognizance pursuant to 8 U.S.C. § 1226.  On May 13, 2025, petitioner was arrested and re-detained by Immigration and Customs Enforcement ("ICE") agents at the Arlington, Texas, police department.  Petitioner has been in continuous detention since May 13, 2025.  This habeas action concerns petitioner's re-detention.  For the reasons that follow, the Court recommends denying the motion to dismiss, granting the petition for a writ of habeas corpus, and ordering respondents to provide petitioner with a bond hearing within seven days.

///

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.   FACTUAL BACKGROUND

Petitioner is a 32-year old citizen and native of Senegal.  (ECF Nos. 2 at 9 (Petition); 7-1 at 1 (Form I-213).)  On October 26, 2023, petitioner entered the United States without inspection and was detained.  (Id., ECF No. 13-1 at 1 (Notice to Appear).)  On October 28, 2023, petitioner was released on his own recognizance under 8 U.S.C. § 1226 (Section 236 of the Immigration and Nationality Act ("INA")).  (ECF No. 13-1 at 4 (Notice of Custody Determination); Id. at 5 (Order of Release on Recognizance).)[2]  Petitioner was issued a Notice to Appear and placed in standard removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240)[3] as "an alien present in the United States who has not been admitted or paroled" in violation of 8 U.S.C. § 1182(a)(6)(A)(i) (INA § 212(a)(6)(A)(i)).  (ECF No. 13-1 at 1.)  In addition, the Notice to Appear does not allege petitioner is an "arriving alien," though the Notice does include a place to designate this information.  (ECF No. 13-1 at 1.)

Petitioner filed an application for asylum, which is pending with the immigration court.  (ECF No. 2 at 3.)  Petitioner alleges that he has "no violent criminal history and has consistently complied with all immigration reporting requirements."  (Id. at 6.)  Petitioner declares he has sustained no criminal convictions, and has never missed an immigration court hearing.  (ECF No. 14 at 3.)

Respondents contend petitioner violated a condition of his release that he "not violate any local, State, or Federal laws or ordinances" when he was arrested.  (ECF No. 13 at 1 (citing ECF No. 13-1 at 5).)  According to the Form I-213, on May 9, 2025, petitioner was arrested by the Arlington Police Department for unlawful restraint (charge 1) and indecent exposure (charge 2), and the charges are "currently pending," but "no prosecution/court data available."  (ECF No. 7-1 at 2-3.)[4]

---

[2]  The Cancellation of Order portion of the Order of Release, provided by respondents with their motion to dismiss, is blank.  (ECF No. 13-1 at 5.)

[3]  Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

[4]  In their pending motion to dismiss, respondents incorporate their reasons and factual disputes

On May 9, 2025, petitioner was encountered by immigration agents at the Arlington Police Department.  (Id. at 3.)  A detainer was placed on petitioner on May 9, 2025, due to his immigration status.  (Id.; ECF No. 13-1 at 8-11 (Detainer).)[5]  On May 13, 2025, petitioner was transported to the ICE Dallas Field Office.  (Id.)

On May 13, 2025, in Dallas, Texas, petitioner was served with an arrest warrant pursuant to Section 236 of the INA (8 U.S.C. § 1226), alleging probable cause to believe petitioner is removable from the U.S. based on the pendency of ongoing removal proceedings and/or that federal records, petitioner's statements, or other reliable evidence indicate that petitioner "either lacks immigration status or notwithstanding such status is removable under U.S. immigration law."  (ECF No. 13-1 at 6 (Arrest Warrant).)  On May 13, 2025, pursuant to Section 236 of the INA (8 U.S.C. § 1226), it was determined that petitioner would be detained.  (ECF No. 13-1 at 7 (Notice of Custody Determination).)  Petitioner requested an immigration judge review the custody determination.  (Id.)  On July 18, 2025, an immigration judge denied petitioner's request for custody redetermination, because the immigration judge found that the Matter of Q. Li, 19 I&N Dec. 66, 68 (B.I.A. 2025), applies to petitioner.  (ECF No. 2-1 at 20-21.)[6]

Petitioner was not provided a pre-deprivation hearing, and alleges that he was not deemed to be a flight risk or found to be a danger to the community.  (ECF No. 2 at 11.)  Petitioner has been in continuous detention since May 13, 2025.

///

///

---

argued in their opposition to injunctive relief and request to dismiss the petition (ECF No. 7). (ECF No. 13 at 1.)  Petitioner argues that an arrest is not a conviction, petitioner has not been convicted of any offense triggering mandatory detention under § 1226(c), and the Department of Homeland Security ("DHS") did not invoke § 1226(c) in re-detaining petitioner.  (ECF No. 15 at 6.)

[5]  An earlier arrest warrant was prepared, signed, and dated May 9, 2025, but it does not bear an executed certificate of service.  (ECF No. 13-1 at 12.)

[6]  In Q.Li, the B.I.A. concluded that "for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'"  Q. Li, 29 I&N Dec. at 68.  In other words, in this case, the immigration judge concluded the immigration court lacked authority to conduct a custody redetermination.

## II.    PROCEDURAL BACKGROUND

On January 15, 2026, petitioner, through counsel, filed his petition for writ of habeas corpus.  (ECF No. 2.)  That same day, petitioner filed a motion for temporary restraining order. (ECF N. 1.)  On January 20, 2026, respondents filed an opposition to the motion for temporary restraining order and a request to dismiss the petition, and petitioner filed a reply.  (ECF Nos. 7, 8.)  On January 21, 2026, the district court denied the motion for temporary restraining order as untimely and referred the matter to this Court.  (ECF No. 9.)  On February 6, 2026, respondents timely filed a motion to dismiss the petition.  (ECF No. 13.)  On February 11, 2026, petitioner filed a declaration,[7] and on February 13, 2026, petitioner timely filed an opposition to the motion to dismiss.  (ECF Nos. 14, 15.)  Respondents did not file a reply.  Briefing is now complete.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner challenges his continued detention based on the violation of the following:  (1) unlawful detention in excess of

---

[7] Although petitioner's declaration states it was submitted in support of his motion for temporary restraining order, the Court considers his declaration in addressing the motion to dismiss.

4

statutory authority under the INA; (2) the Fifth Amendment due process clause; and (3) detention without meaningful review in violation of the INA and continued deprivation of liberty.  (ECF No. 2 at 16-20.)[8]  Petitioner seeks immediate release or, in the alternative, "prompt, constitutionally adequate relief sufficient to cure the absence of any individualized custody determination, consistent with the Due Process Clause of the fifth Amendment."  (Id. at 21.)

Respondents do not expressly argue that petitioner is a flight risk or a danger to the community and instead argue that petitioner violated the conditions of release when he was arrested for kidnapping and indecent exposure.  (ECF No. 13 at 1-2.)  Further, respondents argue that because petitioner entered the U.S. illegally, petitioner is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is ineligible for a bond hearing.  (Id. at 2.)  Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id.)  In the alternative, respondents request that the Court stay this matter pending resolution of the appeal in Rodriguez v. Bostock, No. 25-6842 (9th Cir.).  (Id.)

A.    **Statutory Claims (First Claim and Portion of Third Claim)**

The first issue here is whether petitioner, who has lived in the United States since October 2023, is subject to discretionary release as first ordered by immigration officials under § 1226(a) as petitioner contends, or whether, petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing. 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under Section 1226(a), the Government has broad discretion whether to release or detain the individual.  See id.  Section 1226(a) provides several layers of review for an initial custody determination and it confers "an initial bond hearing before a neutral

---

[8]  Petitioner includes a fourth claim for relief in which he seeks attorney's fees and costs.  (ECF No. 2 at 20.)  Petitioner may seek attorney's fees and costs by filing a proper motion after resolution of this action.

decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Id. at 1202. Respondents contend § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention. (ECF No. 13 at 2.)

The Court concludes that § 1226 applies to petitioner. First, immigration authorities expressly released petitioner on his own recognizance pursuant to 8 U.S.C. § 1226 (INA § 236) on October 28, 2023. (ECF No. 13-1 at 4, 5.) Respondents do not dispute this and submitted documentation of petitioner's release pursuant to 8 U.S.C. § 1226. (See ECF No. 13; ECF No. 13-1 at 4, 5.)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[9] of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A.

_____

[9] Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196.

v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, this Court finds that Buenrostro-Mendez, 166 F. 4th 494 (5th Cir. 2026), issued the same day respondents filed their motion to dismiss, is unavailing. In Buenrostro-Mendez, the Fifth Circuit agreed with respondents' interpretation of § 1225(b)(2). This Court agrees with the district court in Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026):

> Two courts of appeal have addressed whether 8 U.S.C. § 1225(b)(2)(A) applies to noncitizens who have lived in the United States for years without having been admitted. See Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025) (concluding that government was not likely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)); Buenrostro-Mendez v. Bondi, --- F.4th ---, Nos. 25-20496, 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (finding petitioners were subject to mandatory detention under § 1225(b)(2)(A)). Respondents cite to the Buenrostro-Mendez decision. Doc. 9 at 1. The Court finds the analysis in Castañon-Nava and in the dissent in Buenrostro-Mendez to be more persuasive on the statutory interpretation issue. In any event, the Buenrostro-Mendez decision did not address the due process claim at issue in the present case."

Gurvinder Singh, 2026 WL 413839, at *1 n.1. This Court does not find Buenrostro-Mendez to be persuasive for the reasons provided above. See also Singh v. Baltazar, 2026 WL 352870, at *3-6

(D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same).  In addition, as in Gurvinder Singh, petitioner raises a due process claim, which the court in Buenrostro-Mendez did not address, and which the Court turns to next.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was expressly released on his own recognizance pursuant to § 1226, he has resided in this country for over a year and a half since his release in October 2023, and petitioner's May 2025 re-arrest and re-detention were not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)).  If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release.  Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  As such, petitioner should have been provided a bond hearing before his re-detention and is entitled to relief on his statutory claim.

**B.      Due Process Claims (Petitioner's Second Claim and Portion of Third Claim)**

Petitioner also argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment, and has a liberty interest in not being incarcerated after prior release without any meaningful opportunity for individualized review.  (ECF No. 2 at 15, 18-19, 20.)  Respondents argue petitioner is ineligible for a bond hearing because he is subject to

mandatory detention and he does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (ECF No. 13 at 2.) Respondents' asserted compliance with § 1225(b)(2)(A) does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring

attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention and subsequent release on his own recognizance pursuant to § 1226 in October 2023 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over a year and a half. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release pursuant to 8 U.S.C. § 1226(a) was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk. See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025). In light of all of the foregoing, the Court finds that petitioner's prior release pursuant to 8 U.S.C. § 1226(a) created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4. This Court concludes that petitioner has a protected liberty interest in his release. See Guillermo M. R.

v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over a year and a half, petitioner was free from custody before his re-detention. Petitioner declares that before his re-detention, he was "lawfully authorized to work and had established strong ties to the United States through [his] religious community." (ECF No. 14 at 2; 2-1 at 33-34 (USA Employment Authorization).) The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and

11

interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).  Petitioner attached to his petition portions of his immigration file, including his June 19, 2025 motion for bond reconsideration in immigration court, including many letters of support for petitioner.  (ECF No. 2-1 at 56-171.)  Petitioner alleges he has no criminal record in Senegal.  (Id. at 173-74.)

The second Mathews factor also weighs in petitioner's favor.  "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents argue that petitioner's arrest was a violation of the condition of his release that he "not violate any local, State, or Federal laws or ordinances," but do not argue that petitioner was convicted of any criminal charges.  (See ECF No. 13 at 1.) Petitioner disputes that he violated this release condition, arguing that he has sustained no criminal convictions. (ECF No. 14 at 3.)  The Court need not resolve this dispute regarding whether petitioner's arrest (and not conviction) constituted a violation of a release condition.  "If respondents wish to establish that re-detention is warranted by raising the effect of . . . alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."  Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025).

Here, petitioner has been detained since May 13, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest

in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance pursuant to § 1226 after immigration officials determined he was not a flight risk or danger to the community and he lived in the country for over 1.5 years on release. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a bond hearing could not be held, and provided no evidence of "urgent concerns," thus, a bond hearing is required. See Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is also entitled to relief on his due process claims.[10]

## V.    RESPONDENTS' MOTION TO DISMISS

For the reasons set forth above, respondents' motion to dismiss should be denied. In addition, respondents' alternative request that this matter be stayed pending a ruling by the Ninth Circuit should also be denied. A stay would not promote the efficient use of scarce judicial resources in a district with some of the highest caseloads in the country. A stay would put a

---

[10]  This Court recognizes that the government may have authority to detain petitioner, but it must do so lawfully, following the requirements of the Constitution and its own regulations. It has failed to do so here.

13

further strain on limited judicial resources.

**VI.    CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondents' motion to dismiss (ECF No. 13) and request to stay this matter be denied.

2. The petition for writ of habeas corpus (ECF No. 2) be GRANTED.

3. Respondents be ordered to provide petitioner with a bond hearing before an immigration judge **within seven (7) days** from the date of an order adopting these findings and recommendations where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify continued detention.

4. Within **fourteen (14) days** from the date of an order adopting these findings and recommendations, respondents must file a status report, confirming that a bond hearing was held, providing the outcome of that hearing, and providing an update as to petitioner's status.

5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 5, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

1/ndoy0314.157.bond.imm

14